## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) Case No. |
| Plaintiff, | ) CLASS ACTION ) ) COMPLAINT FOR VIOLATION OF ) THE FEDERAL SECURITIES LAWS |
| vs. | ) ) |
| SKECHERS U.S.A., INC., ROBERT GREENBERG and DAVID WEINBERG, | ) DEMAND FOR JURY TRIAL ) ) |
| Defendants. | ) ) ) |

STEAMFITTERS LOCAL 449 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

SKECHERS U.S.A., INC., ROBERT GREENBERG and DAVID WEINBERG,

Defendants.

Case No.

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL

## INTRODUCTION

Plaintiff Steamfitters Local 449 Pension Plan ("Steamfitters 449 Pension" or "Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of press releases and other public statements issued by Skechers U.S.A., Inc. ("Skechers" or the "Company"), Skechers' filings with the U.S. Securities and Exchange Commission ("SEC"), and media and analyst reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.       This is a securities class action on behalf of all persons or entities who purchased or otherwise acquired Skechers common stock between April 23, 2015 and October 22, 2015, inclusive (the "Class Period").  The action is brought against Skechers and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.       Skechers designs, develops, and markets footwear for men, women, and children. The Company's primary reporting segments are: (1) Domestic Wholesale; (2) International Wholesale; and (3) Retail (which includes both domestic and international Company stores). From 2013 through 2015, Domestic Wholesale was the Company's primary driver of growth and accounted for higher net sales as compared to the other two segments.  The Domestic Wholesale segment accounted for approximately 39 percent of Skechers' 2015 total net sales.  The Company's Domestic Wholesale customers include department stores, athletic footwear retailers, and specialty shoe stores.

3.       During the Class Period, Skechers repeatedly touted the strength of customer demand within the Domestic Wholesale segment, which the Company claimed would spur continued sales growth.  Skechers frequently emphasized that its Domestic Wholesale segment growth would continue into the second half of 2015 based on pending orders and meetings with key customers.  However, Defendants' (as defined herein) Class Period statements pertaining to back-half 2015 customer demand and sales growth related thereto were materially false and misleading because Defendants failed to disclose that: (1) the Company's Domestic Wholesale customers took early receipt of fall 2015 inventory, causing them to delay receipt of and, in some cases, cancel pending orders scheduled for delivery in the second half of 2015; (2) as a result of

the foregoing, the Company's Domestic Wholesale growth rate was unsustainable; and (3) the Company's positive statements about its business, operations, and prospects lacked a reasonable basis.

4.      The Company's slowing sales growth was revealed on October 22, 2015 after the market closed, when Skechers issued a press release announcing financial results for the third quarter ended September 30, 2015, which included disappointing net sales that fell short of analysts' consensus estimates.  According to Defendants, $20 million in net sales were shifted from third quarter 2015 into second quarter 2015 due to early customer deliveries.  Defendants blamed the sales miss on the Company's inability to make up this shortfall in third quarter 2015 due to a weaker-than-expected retail environment.

5.      On news of the Company's disappointing net sales and diluted earnings per share, Skechers common stock fell $14.55 per share, or 31.50 percent, to close on October 23, 2015 at $31.64 per share.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein,

including the preparation and/or dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  Skechers transacts business in this District, and the Company's stock trades in this District on the New York Stock Exchange ("NYSE").

9. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

10. Plaintiff Steamfitters 449 Pension purchased Skechers common stock during the Class Period, as set forth in the certification attached hereto, and was damaged as the result of Defendants' wrongdoing as alleged in this complaint.

11. Defendant Skechers is a Delaware corporation with its principal executive offices located at 228 Manhattan Beach Boulevard, Manhattan Beach, California, 90266.  The Company's stock is listed on the NYSE under the ticker symbol "SKX."

12. Defendant Robert Greenberg ("CEO Greenberg") served as the Chief Executive Officer ("CEO") of Skechers and Chairman of the Company's Board of Directors during all relevant times.

13. Defendant David Weinberg ("CFO Weinberg") served as the Chief Financial Officer ("CFO") of Skechers and a Director of the Company's Board of Directors during all relevant times.

14. Defendants CEO Greenberg and CFO Weinberg are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Skechers' reports to the SEC, press releases, and presentations to securities analysts, money

4

portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

15.     Skechers and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Skechers designs, develops, and markets footwear for men, women, and children. Following a period of stagnation and volatility from 1999 through 2012, Skechers enjoyed rapid growth from 2013 through 2014.  During this period, revenue streams grew as Skechers opened new retail outlets, entered into distribution deals with department, athletic, and specialty stores and online retailers, and utilized a celebrity-driven marketing campaign.

17.     In June 2014, a dispute erupted between a union representing dockworkers (the "Dockworkers") and a maritime association representing shipowners (the "Shipowners") upon expiration of a labor contract, leading to crippling port delays all along the West Coast of the United States (the "West Coast Port Dispute").  The West Coast ports, which handle about $1

trillion worth of cargo annually, continued to operate for months on end without an official contract.

18.      From late 2014 through early 2015, tensions escalated.  The Dockworkers were accused of slowing down their work to cut productivity, thereby pressuring the Shipowners to meet their demands.  The backlog of idle cargo ships grew, with dozens of cargo ships anchored near ports for days and weeks at a time.

19.      While port disruptions occur from time to time, the West Coast Port Dispute caused extraordinary harm to United States wholesale and retail supply chains.  One consulting firm estimated that the West Coast Port Dispute cost United States retailers $7 billion.

20.      Skechers receives its entire domestic inventory through a single West Coast port: the Port of Long Beach.  Therefore, the West Coast Port Dispute was a central concern to both Skechers and its customers.

21.      On July 23, 2014, during the Company's second quarter 2014 Earnings Call, Defendant Weinberg explained that although the Company sometimes sees revenues slated for fourth quarter move into the third quarter as an "extra turn," it was "way too early to commit to any of that."  Defendant Weinberg also explained:

> [I]f people move [orders] up from July . . . to June there is usually not enough booked for October to move into September to make up the difference wholly.

Defendant Weinberg revealed two important facts: (1) in July, it is premature for the Company to anticipate early deliveries of pending October shipments; and (2) when Skechers sees revenue shift from July into June (third quarter into second quarter), the Company does not have enough orders booked for October to move into September (fourth quarter into third quarter) to make up that loss in revenue.

22.     Despite the disruption from the West Coast Port Dispute, Skechers reported steady sales growth in 2014 and issued a positive 2015 forecast.  On February 11, 2015, Skechers reported strong financial results for the fourth quarter ended December 31, 2014.

23.     Because the West Coast Port Dispute caused uncertainty as to whether or when shipping times would normalize, Skechers' Domestic Wholesale customers placed fall 2015 merchandise orders well in advance to ensure early shipment.  During the fourth quarter 2014 Earnings Call, one analyst raised this issue, asking:

> [C]ould [you] give us a little bit more detail on that . . . backlog number.  How much of . . . that increase can be attributed to shifting your fall 2015 order period earlier . . . ?

Defendant Weinberg replied:

> I don't think any of it is attributable to the fact that [Fall 2015 orders are coming in] early.  We only book out six months . . . .  [S]o we really are only out until the end of June, early July as far as the December 31st backlog is concerned . . . .

Defendant Weinberg's response reveals that, under normal circumstances, Skechers has six months visibility into its Domestic Wholesale customers' scheduled shipments.

24.     However, given the uncertainty over the West Coast Port Dispute, the Company's Domestic Wholesale customers scheduled their "buy meetings" with Skechers earlier than usual, in fourth quarter 2014 rather than first quarter 2015.  During the fourth quarter 2014 Earnings Call, Defendant Weinberg stated:

> [W]e shifted our [Fall 2015 buy] meetings with key domestic accounts . . . into the fourth quarter two months earlier to allow us to meet the [incoming] order rate for our new product.

Due to the earlier buy meetings, Skechers had at least eight months visibility into its fall 2015 merchandise shipment schedule.

25.     On February 20, 2015, the Dockworkers and Shipowners finally reached a five-year contract deal, averting a total shutdown of the ports.  During the following few months, the bottlenecks at the ports began to clear up and large shipments of cargo were delivered to Skechers' Domestic Wholesale customers.

**Materially False and Misleading Statements Issued During the Class Period**

26.     The Class Period begins on April 23, 2015, when Skechers issued a press release announcing financial results for the first quarter ended March 31, 2015.  During the related Earnings Call, Defendant Weinberg made positive statements about sales and customer demand, stating in part:

> [D]espite headwinds, including the stronger US dollar [and] the slow down at the West Coast ports, . . . [Skechers] nevertheless achieved a new quarterly sales record . . . .  With significantly increased worldwide bookings, our year-over-year worldwide backlogs are up mid-double digits at March 31, 2015, which we believe is a clear indicator that **our momentum will continue throughout the year**.

Defendant Weinberg also claimed:

> [O]ur **accelerated growth trend will continue through the second quarter and into the back half of 2015**.  We believe we are well positioned to maintain this growth . . . .

27.     On July 29, 2015, Skechers issued a press release announcing financial results for the second quarter ended June 30, 2015.  The release provided positive statements about customer demand and anticipated sales growth, as well as the Company's Domestic Wholesale segment.  Defendant Weinberg touted the Company's results:

> The continued strong demand for our product worldwide led to record quarterly financial results for the second quarter—including net sales, earnings from operations and earnings per share.

CEO Greenberg added:

> Skechers is clearly in the midst of the most exciting time in the Company's 23-year history.  The present has never looked as colorful, comfortable and

successful thanks to our product and marketing, and resulting record sales, shipments and earnings . . . .  Our efforts in product and marketing also resulted in Skechers becoming the No. 2 athletic footwear brand and the No. 1 walking brand in the United States . . . .  [D]omestic wholesale remains the largest piece of our business at 42 percent . . . .

Defendant Weinberg also stated:

> **We remain comfortable with the analysts' current consensus estimates for the back half of 2015**.

Third quarter 2015 consensus estimates included: (1) $876 million in revenue; and (2) $0.55 diluted earnings per share.

28.     During the related second quarter 2015 Earnings Call, the Company continued to tout strong growth and customer demand.  Defendant Weinberg stated:

> The second quarter benefited from both pent-up demand resulting from US port issues in the first quarter, as well as a shift in back-to-school shipments due to increased demand in both domestic and international markets.  This continued strong demand for our product worldwide also led to record net sales, earnings from operations, net earnings, and earnings per share in the second quarter.

Defendant Weinberg also claimed:

> Our year-over-year worldwide backlogs are up mid-double-digits at June 30, 2015 which we believe is a clear indicator that **our momentum will continue throughout the year** . . . .  Based on our domestic wholesale backlog, . . . strong sell-throughs for spring, and early feedback on our fall products, **we believe we will continue our sales momentum through the back half of 2015**.

29.     During the questions and answers segment of the second quarter 2015 Earnings Call, Defendant Weinberg provided additional details regarding anticipated back-half 2015 performance:

> **We think it's all positive going into third quarter.**  And we hear we're performing well for back to school.  Most people do think it's starting slower because of the late Labor Day.  But we still continue to perform very positively and get great feedback from our customers.

One analyst asked about a revenue shift from July (third quarter) into June (second quarter) and the potential for a subsequent revenue shift from October (fourth quarter) into September (third quarter).  Defendant Weinberg replied:

> I believe there's certainly a possibility of that as back to school picks up.  We have to see how back to school continues.  They took it in early.  **I haven't heard of any slowdowns.  So certainly, if we continue at this pace, we would anticipate up from Q4 into Q3**.

30.     The statements contained in ¶¶ 26-29 were materially false and/or misleading when made because Defendants failed to disclose that:  (1) the Company's Domestic Wholesale customers took early receipt of fall 2015 inventory, causing them to delay receipt of and, in some cases, cancel pending orders scheduled for delivery in the second half of 2015; (2) as a result of the foregoing, the Company's Domestic Wholesale growth rate was unsustainable; and (3) the Company's positive statements about its business, operations, and prospects lacked a reasonable basis.

31.     On October 22, 2015, Skechers issued a press release announcing financial results for the third quarter ended September 30, 2015, which included disappointing net sales that fell short of analysts' consensus estimates.  According to Defendants, $20 million in net sales were shifted from third quarter 2015 into second quarter 2015 due to early customer deliveries.  Defendants blamed the sales miss on Skechers' inability to make up this shortfall in third quarter 2015 due to a weaker-than-expected retail environment.

32.     On news of the Company's disappointing net sales and diluted earnings per share, Skechers common stock fell $14.55 per share, or 31.50 percent, to close on October 23, 2015 at $31.64 per share.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## ADDITIONAL SCIENTER ALLEGATIONS

34.     During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

35.     The Individual Defendants permitted Skechers to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's common stock.

36.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Skechers, their control over, receipt, and/or modification of Skechers' allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Skechers, participated in the fraudulent scheme alleged herein.

37.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Skechers common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme deceived the investing public regarding Skechers' business, operations, and

management and the intrinsic value of Skechers common stock and caused Plaintiff and

members of the Class to purchase Skechers common stock at artificially inflated prices.

### LOSS CAUSATION/ECONOMIC LOSS

38.     During the Class Period, as detailed herein, Skechers and Individual Defendants

made false and misleading statements and engaged in a scheme to deceive the market and a

course of conduct that artificially inflated the prices of Skechers common stock, and operated as

a fraud or deceit on Class Period purchasers of Skechers common stock by misrepresenting the

Company's business and prospects.  Later, when Defendants' prior misrepresentations and

fraudulent conduct became known to the market, the price of Skechers common stock declined

as the prior artificial inflation came out of the price over time.  As a result of their purchases of

Skechers common stock during the Class Period, Plaintiff and other members of the Class

suffered economic loss, *i.e.*, damages, under the federal securities laws.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

39.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-

the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material

facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's stock traded in an efficient market;

(d)     the misrepresentations alleged would tend to induce a reasonable investor

to misjudge the value of the Company's stock; and

(e)     Plaintiff and other members of the Class purchased Skechers common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

40.     At all relevant times, the markets for Skechers common stock were efficient for the following reasons, among others:

(a)     as a regulated issuer, Skechers filed periodic public reports with the SEC;

(b)     Skechers regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)     Skechers was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)     Skechers common stock was actively traded in an efficient market, namely the NYSE, under the ticker symbol "SKX."

41.     As a result of the foregoing, the market for Skechers common stock promptly digested current information regarding Skechers from publicly available sources and reflected such information in Skechers' stock price.  Under these circumstances, all purchasers of Skechers common stock during the Class Period suffered similar injury through their purchase of Skechers common stock at artificially inflated prices and the presumption of reliance applies.

42.     Further, to the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff is entitled to a presumption of

reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).

## NO SAFE HARBOR

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Skechers who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased or otherwise acquired Skechers common stock between April 23, 2015 and October 22, 2015, inclusive (the "Class"). Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Skechers, and the directors and officers of Skechers and their families and affiliates at all relevant times.

45. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of August 1, 2017, Skechers had: (1) 133,885,844 shares of Class A common stock outstanding; and (2) 24,545,188 shares of Class B common stock outstanding.

46. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether the Exchange Act was violated by Defendants;

(b) Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e) Whether the price of Skechers common stock was artificially inflated; and

(f) The extent of damage sustained by Class members and the appropriate measure of damages.

47. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

48. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in securities class action litigation. Plaintiff has no interests that conflict with those of the Class.

49.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### CLAIMS FOR RELIEF

### COUNT  I
### For Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Skechers common stock during the Class Period.

53.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Skechers common stock.  Plaintiff and the Class would not have purchased Skechers common stock at the prices they paid, or at all, if they

had been aware that the market prices had been artificially and falsely inflated by Defendants'
misleading statements.

54.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff
and the other members of the Class suffered damages in connection with their purchases of
Skechers common stock during the Class Period.

**COUNT  II**
**For Violation of Section 20(a) of the Exchange Act**
<u>**Against the Individual Defendants**</u>

55.     Plaintiff repeats and realleges each and every allegation contained in the
foregoing paragraphs as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Skechers within the
meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to
control public statements about Skechers, the Individual Defendants had the power and ability to
control the actions of Skechers and its employees.  By reason of such conduct, Defendants are
liable pursuant to Section 20(a) of the Exchange Act.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Federal Rule of Civil
Procedure 23;

B.     Awarding Plaintiff and the members of the Class damages and interest;

C.     Awarding Plaintiff's reasonable costs, including attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and
proper.

<u>**JURY DEMAND**</u>

Plaintiff demands a trial by jury.

DATED:  October 20, 2017

**LABATON SUCHAROW LLP**

*/s/ Christopher J. Keller*
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: ckeller@labaton.com
         ebelfi@labaton.com
         fmcconville@labaton.com

*Attorneys for Plaintiff Steamfitters Local
449 Pension Plan*

## CERTIFICATION

I, Joseph M. Little, as Chairman of the Board of Trustees of Steamfitters Local 449 Pension Plan ("Local 449"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of Local 449.  I have reviewed a Complaint prepared against Skechers U.S.A., Inc. ("Skechers") alleging violations of the federal securities laws;

2.      Local 449 did not purchase common stock of Skechers at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      Local 449 is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary;

4.      Local 449's transactions in Skechers common stock during the Class Period are reflected in Exhibit A, attached hereto;

5.      Local 449 sought to serve or currently serves as a lead plaintiff in the following class actions under the federal securities laws filed during the last three years:

> *Read v. Amira Nature Foods Ltd.,* No. 2:15-cv-0957 (C.D. Cal.)
> *International Brotherhood of Electrical Workers Local No.38 Pension Fund Pension Plan v. KLX Inc.,* No. 9:16-cv-80023 (S.D. Fla.)
> *Lentch v. Vista Outdoor,* No. 1:17-cv-0012 (D. Utah.)

6.      Local 449 sought to serve as a representative party but not as a lead plaintiff in the following class action under the federal securities laws filed during the last three years:

> *Steamfitters Local 449 Pension Plan v. Eaton Corporation PLC,* No. 1:16-cv-06393 (S.D.N.Y.)
> *Steamfitters Local 449 Pension Plan v. Maximus, Inc.,* No. 1:17-cv-0884 (E.D. Va.)

7.      Beyond its pro rata share of any recovery, Local 449 will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this _20th_ day of October, 2017.

Joseph M. Little
Chairman of the Board of Trustees
Steamfitters Local 449 Pension Plan

EXHIBIT A

TRANSACTIONS IN SKECHERS U.S.A., INC.

| Transaction Type | Trade Date | Shares | Price Per Share | Cost / Proceeds |
|---|---|---|---|---|
| Sale | 05/29/15 | -1,170.00 | $35.27 | $41,269.76 |
| Sale | 08/06/15 | -990.00 | $54.21 | $53,664.63 |
| Purchase | 08/18/15 | 1,824.00 | $51.33 | ($93,625.92) |
| Sale | 09/02/15 | -501.00 | $45.84 | $22,965.84 |
| Sale | 09/02/15 | -1,200.00 | $45.84 | $55,008.00 |
| Purchase | 09/23/15 | 6.00 | $47.68 | ($286.06) |
| Purchase | 09/24/15 | 1,065.00 | $46.62 | ($49,646.79) |